UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


IRVING MURRAY,                      :
        Plaintiff                   :
                                    :
    v.                              :    CIVIL NO.3:CV-05-431
                                    :
                                    :    (Judge Conaboy)
JEFFREY A. BEARD, ET AL.,           :
        Defendants                  :
_____

**MEMORANDUM**
**Background**

This pro se action was filed by Irving Murray, an inmate
presently confined at the Rockview State Correctional
Institution, Bellefonte, Pennsylvania (SCI-Rockview).  By
Memorandum and Order dated March 3, 2006, this Court granted
Defendants Kathleen Kennedy and Jane Davis' motion to dismiss.
On March 10, 2006, a motion to dismiss filed by Defendants
Thomas Radecki, M.D., Robyn Johns, Ph.D., and Darlene Kenney,
R.N was granted.

The remaining Defendants (hereinafter Corrections
Defendants) are Secretary Jeffrey Beard of the Pennsylvania
Department of Corrections (DOC) and the following SCI-Rockview
employees: Superintendent Franklin Tennis, Deputy Superintendent
Joel Dickson, Captain Lynn Eaton, Nursing Director Amy
Crissitello, Lieutenant Shultz, Sandy Kibler, R.N., Medical
Doctor Fred Maue, Psychologist John Walmer, Ph.D., Health Care
Administrator Richard Ellers, Nurse Pat Moyer, John Kertis,

1

Deputy Warden Ray Coffman, Brad Norris, Major George Snedeker, Lieutenant Knauff, Correctional Officers Peters, Hagg, D. Smith, and John Doe.[1]  See Doc. 1, p. 1.

Murray's original complaint, accompanying addendum, and the amended complaint are set forth in a rambling, at times indiscernible manner.  It is sometimes difficult to ascertain the nature of Plaintiff's allegations due to his admitted mental health problems and pro se status.  However, his pleadings will be afforded liberal treatment.

Murray's original complaint initially alleges that on November 25, 2004, he was punched in his left eye three (3) times by a John Doe Defendant. Defendants Kertis and Smith purportedly participated in that assault.  As a result of his injury, Plaintiff was put on medication for two weeks.  Captain Eaton purportedly attempted to cover up the attack by failing to review and preserve videotape evidence.  It is next asserted that Defendants Dickson, Snedeker and Tennis failed to discipline the correctional officers who assaulted Murray. Plaintiff adds that Defendants Crissitello and Norris told him that he "kinda asked for that punch in the eye."  Doc. 1, ¶ IV(4)).

---

[1] It is noted that the list of Defendants in the original complaint differs from the listing contained in the accompanying addendum.

An addendum accompanying the original complaint lists the following SCI-Rockview officials presumably as Additional Defendants, Correctional Officers Scott Dale, Scott Kliefelter, T. Watson, Stephen Glunt, and D.J. Frank and D. McKissick, R.N. Plaintiff's supplement indicates that he was subjected to a retaliatory denial of access to a box of his legal materials while in the SCI-Rockview Mental Health Unit.  It claims in part that Nurse McKissick told Plaintiff that his legal materials could be taken away at any time and written requests sent to Defendants Dickson and Tennis regarding his missing legal materials were apparently unsuccessful.  Murray adds that he showed Defendants Frank, Kliefelter, Smith, Knauff, Crissitello and McKissick a portion of his Jailhouse Lawyers Manual, in an apparent attempt to establish that he was being improperly denied access to his legal materials.

Plaintiff next indicates that Nurse Moyer acted improperly by concurring with Doctor Kevin Burke's assessment that he was not a candidate for Interferon therapy.[2]  Nursing Director Cristello and CO Kliefelter allegedly told Murray that they understood why he would want to have the Interferon Therapy, while Health Care Administrator Ellers notified him that he

---

[2] Plaintiff alleges that he has been diagnosed as having Hepatitis C.

3

would get the treatment if he met treatment criteria.

On April 18, 2005, Plaintiff submitted a document which this Court previously construed as being an amended complaint. See Doc. 27. The amended complaint seeks relief under 42 U.S.C. § 1983 claims and also raises pendent state law tort claims. The previously named Correctional Defendants listed as Defendants therein are Beard, Dickson, Moyer, Ellers, Coffman, D. Smith, Kertis and John Doe. Added as Corrections Defendants are Hearing Examiner Jay Stidd, Lieutenant Schultz, and Correctional Officer Peters.

Murray reiterates his prior allegation of being assaulted on November 25, 2004, adding that on said date he attempted to hang himself with a bed sheet. Correctional Officers Smith and Kertis entered his cell and untied him. Defendant Peters also arrived and offered assistance. Plaintiff then climbed on top of a desk in his cell. When other correctional staff including Defendant John Doe arrived, Murray dove off in "an attempt to commit suicide." Doc. 27, ¶ 27. The Plaintiff was held down on the floor. While Correctional Officer John Doe was attempting to handcuff Plaintiff, said officer allegedly punched him three (3) times in the left eye.

Defendant Smith denied seeing any punches and Nurse Moyer stated that she could not see anything wrong with Murray's eye.

4

However, Lieutenant Schultz purportedly apologized for the use of force and requested that photographs be taken of the prisoner's eye.[3]

On November 29, 2004, Correctional Officer Hagg handcuffed Plaintiff while he was examined by Physician's Assistant Kathleen Kennedy. From November 29 to December 3, 2004 Plaintiff was allegedly denied writing materials and grievance forms by unidentified persons. His next claim is that he was not provided with needed medical care by Snedeker, Coffman, Ellers, Moyer, Cristello, Mauve, and Symons. Murray also alleges that his due process rights were violated during institutional disciplinary proceedings by Defendants Stidd and Tennis. The amended complaint seeks compensatory and punitive damages as well as injunctive and declaratory relief.

### Discussion

The Corrections Defendants contend that they are entitled to an entry of dismissal because: (1) there are no allegations that Defendants Beard, Dickson, Tennis, Maue, Walmer, Watson, Snedeker, Dale, Kliefelter, Eaton, Glunt, Ellers and Frank had personal involvement in any unconstitutional acts; (2) there are no specific allegations regarding the alleged use of excessive

---

[3]  Murray adds that Correctional Officers Peters, Doe, Kertis, and Smith have a history of employing excessive force against inmates.

force, (3) the allegations do not sufficiently support a claim of deliberate indifference to a serious medical need; and (4) a viable retaliation claim has not been raised.

**Standard of Review**

A court, in rendering a decision on a motion to dismiss, must accept the veracity of the plaintiff's allegations. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990). In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), the Court of Appeals for the Third Circuit added that when considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

"The test in reviewing a motion to dismiss for failure to state a claim is whether, under any reasonable reading of the pleadings, plaintiff may be entitled to relief." Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993) (citation omitted). Additionally, a court must "accept as true the

6

factual allegations in the complaint and all reasonable inferences that can be drawn from them." Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990); Independent Enters., Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1168 (3d Cir. 1997). Finally, it is additionally well-settled that pro se complaints should be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972). This Court will now discuss the Corrections Defendants' motion in light of the standards set forth above and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**Personal Involvement**

The Corrections Defendants' initial argument is twofold. First, they contend that Defendants Watson, Dale, Glunt, and Frank are entitled to dismissal because other than being listed as Defendants they are not mentioned at all in the complaint. Second, they argue that Murray has not alleged any personal involvement in constitutional misconduct by Defendants Beard, Tennis, Dickson, Maue, Walmer, Eaton, Snedeker, Kliefelter, and Ellers.

A plaintiff, in order to state a viable civil rights claim under § 1983, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the

plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 638 (3d Cir. 1995); <u>Shaw by Strain v. Strackhouse</u>, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Civil rights claims also cannot be premised on a theory of *respondeat superior*.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. <u>See</u> <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1077 (3d Cir. 1976).  As explained in <u>Rode</u>:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.

<u>Rode</u>, 845 F.2d at 1207.

The addendum accompanying the original complaint lists Correctional Officers Scott Dale, T. Watson, Stephen Glunt, and D.J. Frank as Defendants.  This Court's review of the original complaint and addendum as well as the amended complaint establishes that there are no factual averments whatsoever set forth against Dale, Watson and Glunt.  Under the standards established in <u>Rode</u>, the mere listing of those three (3)

8

Correctional Officers as being Defendants is clearly
insufficient for purposes of setting forth a valid § 1983 claim.

With respect to his claim of being denied access to a box
of his personal legal documents, Murray generally states that he
showed Correctional Officer Frank and other Defendants a page
from his Jailhouse Lawyer's Manual. See Doc. 1, Addendum, p. 5.
There are no other averments or allegations set forth regarding
Officer Frank.

Based on an application of the Rode principles and taking
into consideration the Plaintiff's pro se status,[4] Murray has
failed to satisfy his burden of alleging that Defendant Frank
was personally involved in any unconstitutional conduct.  A
general averment that Correctional Officer Frank was one of
several Defendants who were shown a portion of the Plaintiff's
Jailhouse Lawyers' Manual is clearly insufficient for stating a
claim that Frank had personal involvement in the alleged
interference with Murray's right of access to the courts.  The
request for dismissal will be granted with respect to
Correctional Officers Scott Dale, T. Watson, Stephen Glunt, and
D.J. Frank.

The second prong of the Corrections Defendants' argument

---

[4] It is additionally noted that Murray asserts that he suffers
from psychiatric problems and was under the care of Doctor T.
Radecki, a psychiatrist.

claims that Plaintiff has not alleged personal involvement in constitutional misconduct by Secretary Beard, Superintendent Tennis, Deputy Superintendent Dickson, Doctor Maue, Psychologist Walmer, Captain Eaton, Major Snedeker, Health Care Administrator Ellers and Correctional Officer Kliefelter.  They add that the claims against Beard, Dickson, Tennis, Maue, Walmer and Eaton appear to be premised on a theory of *respondeat superior*.

In the present case, Murray is alleging that he was the victim of excessive force on November 25, 2004, denied or given limited access to the courts, not provided with adequate medical treatment, subjected to retaliation and was not provided with due process during an institutional disciplinary hearing.  There are no factual averments set forth alleging that DOC Secretary Beard, Superintendent Tennis, and Deputy Superintendent Dickson had any actual involvement or acquiescence in those purported acts of constitutional misconduct.  Rather, Plaintiff is claiming only that those officials failed to discipline the members of the SCI-Rockview staff who violated his constitutional rights.

It is apparent that Murray is attempting to establish liability against those three (3) Defendants solely on the basis of their respective supervisory capacities.  Consequently, under the standards announced in <u>Rode</u>, Secretary Beard, Superintendent Tennis and Deputy Superintendent Dickson are entitled to an entry of dismissal.

Plaintiff describes Doctor Maue as being Chief of the DOC's

Clinical Healthcare Services.  Murray avers that Doctor Maue reviewed the prisoner's medical file and apologized for the way he contracted HCV during his prior confinement at the State Correctional Institution, Pittsburgh, Pennsylvania.  The only other mention of Doctor Maue is his inclusion on a list of various Defendants who allegedly failed to provide Murray with adequate medical care.  <u>See</u> Doc. 27, Prayer for Relief, ¶ 4. There are no assertions that Doctor Maue was actually involved in the Plaintiff's treatment or made any decisions regarding his care.  Accordingly, it appears that Murray is also attempting to establish liability against Doctor Maue under a theory of *respondeat superior* which as noted earlier, is impermissible under § 1983.  Dismissal will also be granted in favor of Doctor Maue.

Plaintiff alleges that Major Snedeker failed to discipline the correctional officers under his supervision and lists him as being one of the Defendants (along with Doctor Maue) who failed to provide him with adequate medical care.  Both of those general contentions have already been addressed and found to be insufficient for purposes of establishing the requisite personal involvement needed for a viable § 1983 claim.  Therefore, Major Snedeker is likewise entitled to entry of dismissal.

Richard Ellers is identified as being the SCI-Rockview Medical Administrator who was responsible for scheduling medical appointments outside the prison and ensuring that inmates were provided with medical care.  The only additional mention of

Ellers is Murray's averment that said Defendant informed him that he would receive Interferon therapy if he met the treatment criteria.  Ellers' response clearly does constitute deliberate indifference.  Since there is no claim that Ellers participated in making the decision as to whether Murray qualified for Interferon therapy, a constitutional claim has not been adequately stated against the Medical Administrator.

     Plaintiff describes Correctional Officer Kliefelter as being someone the inmate trusted.  Murray additionally states that Kliefelter was one of the Defendants who were shown his jailhouse lawyer's manual ( a claim already addressed by this Court) and that the officer assisted Plaintiff by making an inquiry as to the prisoner's eligibility for Interferon therapy. Those averments clearly do allege personal involvement in any constitutional misconduct.

     Doctor Walmer is described as being a prison psychologist. Murray states that Nurse Moyer indicated to him that Walmer agreed that the inmate was not a suitable candidate for Interferon therapy.  <u>See</u> Doc. 1, Addendum, p. 8.  Since this averment could conceivably establish that Doctor Walmer was directly involved in Plaintiff's medical care and acquiesced in a decision regarding Murray's need for medical treatment, the Court will deny said Defendant's request for dismissal on the grounds of lack of personal involvement.

     Similarly, Plaintiff's allegation that Captain Eaton failed to review and preserve videotape evidence of the November 25,

2004 incident sufficiently alleges personal involvement by said official in conduct which could perhaps rise to the level of a constitutional violation.

In conclusion, dismissal based on the Corrections Defendants' lack of personal involvement argument will be granted with respect to Defendants Beard, Tennis, Dickson, Watson, Dale, Glunt, Frank, Kliefelter, Snedeker, Ellers, and Maue, but denied with respect to Defendants Walmer and Eaton.

## Excessive Force

The Corrections Defendants' second argument contends that Plaintiff fails to sets forth specific allegations regarding the alleged excessive use of force.  See Doc. 68, p. 9.  In order to constitute cruel and unusual punishment, a correctional officer's use of force must involve the "unnecessary and wanton infliction of pain."  Whitley v. Albers, 475 U.S. 312, 319 (1986).  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize[s] that conduct prohibited by the Cruel and Unusual Punishment Clause, whether the conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."  Id.

In a later ruling, the United States Supreme Court recognized that the use of force may constitute cruel and unusual punishment even if the prisoner does not sustain "significant" injuries.  Hudson v. McMillian, 503 U.S. 1, 9

(1992).  The core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm."  <u>Fuentes v. Wagner</u>, 206 F.3d 335, 345 (3d Cir.), <u>cert.</u> <u>denied,</u> 531 U.S. 821(2000); <u>Brooks v. Kyler</u>, 204 F.3d 102, 106 (3d Cir. 2000)(even a <u>de minimis</u> use of force, if repugnant to the conscience of mankind, may be constitutionally significant).  As explained in <u>Fuentes</u>:

> Resolution of an Eighth Amendment claim therefore 'mandate[s] an inquiry into a prison official's state of mind.'  Two considerations define that inquiry.  We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections.  If not, our inquiry is at an end.  However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind.  In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain.  'What is necessary to establish an "unnecessary and wanton infliction of pain. . ." varies according to the nature of the alleged constitutional violation.'

<u>Fuentes</u>, 206 F.3d at 344.

"Not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates a prisoner's constitutional rights." <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir.), <u>cert. denied</u>, 414 U.S. 1033 (1973).  If a correctional officer uses physical force in pursuit of valid penological or institutional goals, then the force used will rarely, if ever, violate the Eighth Amendment.  <u>See</u> <u>Whitley</u>, 475 U.S. at 319-20; <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346 (1981).

A court must look to a number of factors to determine

whether a correctional officer has "crossed the constitutional line." Johnson, 481 F.2d at 1033. In Whitley, the Supreme Court, relying on Johnson, listed the following factors which a court should consider: (1) the need for application of force; (2) the relationship between the need and the amount of force used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any attempts made to temper the severity of the forceful response. Whitley, 475 U.S. at 321.

It must also be kept in mind that a correctional officer, to maintain control of inmates, must often make instantaneous, on-the-spot decisions concerning the need to apply force. See Wolff v. McDonnell, 418 U.S. 539, 566-67 (1974). Courts should be hesitant "to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance." Whitley, 475 U.S. at 320.

Based on an application of the above standards to Plaintiff's account of the November 25, 2004 alleged incident of excessive force as set forth in the amended complaint,[5] and summarized earlier in this Memorandum, it is the conclusion of this Court that Murray's assertions of excessive force against Defendants Smith, Kertis, Peters and especially, Defendant John Doe are sufficient to withstand scrutiny under Rule 12(b)(6) and

---

[5] See Doc. 27, ¶¶ 19-43.

will be allowed to proceed.[6]

**Access to the Courts**

It is also noted that prison inmates have a constitutional right of meaningful access to law libraries, legal materials or legal services. Bounds v. Smith, 430 U.S. 817, 821-25 (1977). Failure to provide inmates with legal research material or trained legal assistance can constitute a constitutional violation. Gluth v. Kansas, 951 F.2d 1504, 1507 (9th Cir. 1991). The United States Supreme Court in Lewis v. Casey, 518 U.S. 343, 351-54 (1996), clarified that an inmate plaintiff, in order to set forth a viable claim under Bounds, must demonstrate that a non-frivolous legal claim had been frustrated or was being impeded. A plaintiff must also allege an actual injury to his litigation efforts.

As noted in this Court's Memorandum and Order of March 10, 2006, Plaintiff does not adequately allege that a non-frivolous legal claim was frustrated or impeded, therefore, a cognizable claim of denial of access to the courts has not been stated. See Doc. 107, p. 6; Lewis, 518 U.S. at 351-54. Based upon that prior determination, the Corrections Defendants are entitled to

---

[6] However, plaintiff is forewarned that John Doe defendants may only be allowed "to stand in for the alleged real parties until discovery permits the intended defendants to be installed." Johnson v. City of Erie, 834 F. Supp. 873, 878 (W.D. Pa. 1993) (citations omitted). Absent compelling reasons, a district court may dismiss such defendants if a plaintiff, after being granted a reasonable period of discovery, fails to identify them. Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 37 (E.D. Pa. 1990) ("Fictitious parties must eventually be dismissed, if discovery yields no identities.").

dismissal with respect to any denial of access to the courts
claims asserted against them.

## Deliberate Indifference

It is next argued that "Murray has failed to make any
specific allegations against the Corrections defendants in his
Complaint regarding the alleged denial of medical treatment for
Hepatitis C virus." Doc. 68, p. 10.

Pursuant to the Supreme Court's decision in Estelle v.
Gamble, 429 U.S. 97 (1976), an inmate plaintiff must demonstrate
that prison officials have breached the standard of medical
treatment to which he was entitled. The government has an
"obligation to provide medical care for those whom it is
punishing by incarceration." Id. at 103. However, a
constitutional violation does not arise unless there is
"deliberate indifference to serious medical needs of prisoners"
which constitutes "unnecessary and wanton infliction of pain."
Id. at 104 (citation omitted). A later decision by the Supreme
Court established that the proper analysis for deliberate
indifference is whether a prison official "acted or failed to
act despite his knowledge of a substantial risk of serious
harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994).

Thus, a complaint that a physician or a medical department
"has been negligent in diagnosing or treating a medical
condition does not state a valid claim of medical mistreatment
under the Eighth Amendment [as] medical malpractice does not
become a constitutional violation merely because the victim is a

17

prisoner." <u>Estelle</u>, 429 U.S. at 106.  Where a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence.  <u>See</u> <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir. 1993).  It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation.  <u>See</u> <u>id</u>.

The Court in <u>Durmer</u> added that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff.  However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented.  <u>See</u> <u>id</u>.  In conclusion, deliberate indifference requires more than a medical error. Rather, it must be shown that a prison official failed to take appropriate action despite his/her knowledge that such conduct would create a substantial risk of serious harm.

Murray contends that he was not provided with needed care for Hepatitis C, specifically, that he was not given Interferon treatment despite the fact that it was recommended by one of his treating physicians.  Plaintiff admits that another physician, Doctor Kevin Burke, allegedly made a determination that the prisoner should not receive Interferon treatment for his Hepatitis C.  Doctor Burke purportedly felt that Interferon was not a viable option due to Murray's mental illness.  It is noted

that there is no allegation that the Interferon therapy was denied for any non-medical reason.

Plaintiff also asserts that he suffered a broken arm, had optical problems including an injury to his left eye from the alleged assault by Correctional Officers on November 25, 2004 (he also seeks replacement of broken eye glasses), headaches, and a skin condition which required a skin cream. Murray does not contend that he was denied any necessary mental health care.

It is undisputed that the Plaintiff was under the care of the prison's medical staff and that many of the Corrections Defendants are non-medical personnel. Since there are no assertions that any prescribed or recommended treatment was denied or delayed for non-medical reasons under the standards announced in Durmer, the non-medical Corrections Defendants are clearly entitled to dismissal with respect to the allegations of medical deliberate indifference.

Second, Plaintiff acknowledges that he was placed on an antibiotic for two (2) weeks following the injury to his left eye. He further admits that he was provided with an x-ray and placed in a cast when he fractured his left arm. Murray also acknowledges that the decision not to place him on Interferon therapy was a medical decision made by Doctor Burke. There are no claims that any of the medical Corrections Defendants prevented or delayed him from obtaining treatment for his Hepatitis C. Finally, there are also no allegations that any of the Corrections Defendants caused or acquiesced in any

unjustified delays or denials of treatment for Plaintiff's skin condition, left arm fracture, headaches or optical needs.

Moreover, this Court's March 10, 2006 and March 3, 2006 Memorandums and Orders previously concluded that Murray's medical deliberate indifference allegations at best challenge the quality of the medical care he was provided with while confined at SCI-Rockview, claims which under <u>Estelle</u> are not properly asserted under § 1983. This Court's prior determinations are also applicable to the deliberate indifference claims asserted against the Corrections Defendants. In conclusion, the allegations that the Corrections Defendants were deliberately indifferent to Plaintiff's medicals needs at best voice displeasure over the quality of medical care provided to Murray while at SCI-Rockview and do not rise to the level of a viable constitutional claim.

## **Retaliation**

The Corrections Defendants' final argument is that Murray has failed to set forth a viable claim of retaliation. "Retaliation for the exercise of a constitutional right is itself a violation of rights secured by the Constitution." <u>White v. Napoleon</u>, 897 F.2d 103, 111-12 (3d Cir. 1990); <u>Allah v. Seiverling</u>, 229 F.3d 220, 224-25 (3d Cir. 2000)(a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied, only that the challenged actions were motivated in substantial part by a desire to punish him for the exercise of a

constitutional right).

In Rauser v. Horn, 241 F.3d 330, 333 (2001), the Third Circuit held that a prisoner must prove that the conduct which led to the alleged retaliation was constitutionally protected. If the prisoner satisfies that requirement he must then show he suffered some "adverse action" at the hands of prison officials. Id. Allah defined adverse action as being "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah, 229 F.3d at 225.

Under a liberal reading of the pro se original and amended complaints, it appears that Murray is claiming that he was denied access to the courts and needed medical treatment in retaliation for filing grievances and complaints regarding his alleged assault by correctional officers on November 25, 2004. See Doc. 27, ¶ 55.

This Court has determined that Murray has failed to allege either a viable claim of denial of access to the courts or that the Corrections Defendants were deliberately indifferent to his medical needs. Based on a review of his pleadings, Plaintiff has also not alleged any facts to establish either a retaliatory motive or actual adverse action by any official at SCI-Rockview. Thus, Murray's speculative, conclusory retaliation claims fail

to satisfy the requirements of <u>Rauser</u>.  An appropriate Order

will enter.[7]


                              S/Richard P. Conaboy
_____
                              RICHARD P. CONABOY
                              United States District Judge



DATED: MARCH 24, 2006

_____

[7] A review of the Corrections Defendants' motion establishes
that it does not address Murray's claim that Hearing Examiner Stidd
violated his due process rights during institutional disciplinary
proceedings.  As a result, said claim will proceed. The Plaintiff's
pendent state law tort claims asserted against the Corrections
Defendants who purportedly participated in the November 2004
assault will also be allowed to proceed.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


IRVING MURRAY,                    :
      Plaintiff            :
                                :
      v.                  :   CIVIL NO. 3:CV-05-431
                                :
                                :   (Judge Conaboy)
JEFFREY A. BEARD, ET AL.,         :
                                :
      Defendants          :


**ORDER**

AND NOW, THIS 24th DAY OF MARCH, 2006, in accordance with the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

    1.  The Corrections Defendants' motion to dismiss (Doc. 44) is granted in part.

    2.  Dismissal is entered in favor of the Corrections Defendants with exception of the claims that: (1) Correctional Officers Smith, Kertis, Peters and John Doe subjected Plaintiff to an excessive use of force on November 25, 2004; (2) Lieutenant Eaton failed to preserve and review videotape evidence of the incident and (3) Plaintiff was denied due process during institutional disciplinary proceedings by Hearing Examiner Stidd.

3.   Within twenty (20) days of the date of this

Order, the remaining Corrections Defendants shall

file a response to the surviving claims of

excessive force.


S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge